UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
IRMA SIM,

       *Plaintiff*,       **COMPLAINT**

                  **<u>JURY TRIAL DEMAND</u>**

      -against-

NEW YORK UNIVERSITY, NEW YORK
UNIVERSITY TISCH SCHOOL OF THE ARTS,
JAMES CHAD WHEELESS, and ALLYSON
GREEN,

        *Defendants*.
----------------------------------------------------------X

   Plaintiff, Irma Sim ("Plaintiff"), by and through her attorneys, Ballon Stoll P.C.,

complaining of Defendants, New York University ("NYU"), NYU Tisch School of the Arts

("Tisch"), James Chad Wheeless ("Wheeless"), and Allyson Green ("Green") (collectively,

"Defendants"), alleges upon personal knowledge, unless where information and belief is stated,

the following:

   1.  This is an action brought for substantial compensatory damages and reasonable

counsel fees premised upon Defendants' continuing acts of unlawful discrimination based on

Plaintiff's age, disability, parental status, caregiver status, and association/relationship with her

disabled son, as well as retaliation for complaining of discrimination and going on statutory

medical leave, in violation of the Family and Medical Leave Act of 1993 ("FMLA")*, 29 U.S.C.

2601 *et seq.*, the Executive Law of the State of New York, New York State Human Rights Law

("Executive Law") § 296, *et seq.*, and the Administrative Code of the City of New York, New

York City Human Rights Law ("Administrative Code"), § 8-101, *et seq.*

## JURISDICTION AND VENUE

2.     This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a), and supplemental jurisdiction over the State and City law claims pursuant to 28 U.S.C. § 1367.

3.     As the Southern District is the district where a substantial part of the events giving rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391(a)(2).

## THE PARTIES

*Plaintiff*

4.     Plaintiff is sixty-three (63) years old.

5.     Plaintiff is a "person" within the meaning of Executive Law § 292(1), and within the meaning of Administrative Code § 8-102.

6.     At all relevant times herein, Plaintiff was an "employee" of NYU and Tisch within the meaning of Executive Law § 292(6) and Administrative Code § 8-102.

7.     At all relevant times herein, Plaintiff has been suffering from disabilities within the meaning Administrative Code § 8-102 and Executive Law § 292(21): type II diabetes, a suspected mild stroke, hypertension, uterine cancer, and breast cancer. At all relevant times, these conditions collectively and frequently caused Plaintiff severe headaches, chest pains, neuropathy, shortness of breath, palpitations, and hyperventilation. Often, when these symptoms occurred, Plaintiff's physicians treated her as a stroke patient.

8.     Individually and/or collectively, these conditions were medical impairments that at all relevant times prevented the exercise of a normal physical bodily function of Plaintiff; and/or were demonstrable by medically accepted clinical or laboratory diagnostic technique and/or the allegations below; and/or were regarded by Defendants as such an impairment.

9.      Such impairment(s)—even in the aggregate—did not prevent Plaintiff from performing all her job responsibilities in a reasonable manner with reasonable accommodation.

10.     At all relevant times since March of 2020, Plaintiff has been suffering from, kidney issues.  This too was a medical impairment that at all relevant times since March of 2020 prevented the exercise of a normal physical bodily function of Plaintiff—kidney functions—and/or was demonstrable by medically accepted clinical or laboratory diagnostic techniques and/or the allegations below, and/or was regarded by Defendants as such an impairment.  This impairment, likewise, did not prevent Plaintiff from performing all her job responsibilities in a reasonable manner with reasonable accommodation even when aggregated with Plaintiff's other medical conditions.

11.     Prior to going on FMLA leave as set forth herein, Plaintiff was an "eligible employee" of NYU and Tisch within the meaning of 29 U.S.C. § 2611(2).   When Plaintiff requested said FMLA leave, Plaintiff had been employed by NYU and Tisch for at least twelve (12) months and for over one thousand two hundred and fifty (1,250) hours of service with NYU and Tisch during the previous twelve (12)-month period.

12.     When Plaintiff went on FMLA leave between January and March of 2022, as set forth herein, Plaintiff's minor son, under the age of eighteen (18), was suffering from a broken shin.

13.     Plaintiff's son's aforementioned broken shin was—and/or was regarded by Defendants as—a disability within the meaning of Administrative Code § 8-102 during Plaintiff's FMLA leave between January and March of 2022, as it prevented Plaintiff's son from being able to use his legs including, *inter alia*, to stand and walk.

14.     Upon requesting/taking FMLA leave to care for her injured son, Plaintiff made Defendants aware that Plaintiff was a parent under Executive Law §§ 292(26), 296(1)(A), and would be/was a "caregiver" within the meaning of Administrative Code §§ 8-102, and 8-107. Plaintiff made Defendants aware and/or perceive that Plaintiff's son would be/was dependent on Plaintiff to meet the needs of daily living and/or to provide medical care.  Plaintiff made Defendants aware that, and/or perceive that, during FMLA leave between January and March of 2020, Plaintiff would be/was responsible for, *inter alia*, scheduling her son's doctor's appointments; driving her son to doctor's appointments, lab tests, and physical therapy; monitoring her son's daily health condition to ensure no complication arose such as infection; bathing her son; administering her son his medication; preparing her son's meals; assisting her son in eating his meals; and helping her son go in and out of bed.

15.     Plaintiff resides in the County of Middlesex, State of New Jersey.

***Defendants***

16.     At all relevant times, NYU was a private, not-for-profit New York Education Corporation, located and operated in New York, New York.

17.     At all relevant times, Tisch was a constituent school of NYU, located and operated in New York, New York.

18.     At all relevant times, NYU and Tisch were Plaintiff's "employer" within the meaning of Executive Law § 292(5), Administrative Code § 8-102, and 29 U.S.C. § 2611(4)(A).

19.     Green is approximately in her mid-fifties (50s).

20.     At all relevant times, Green was employed by NYU and Tisch as the Dean of Tisch.

21.     At all relevant times Green had supervisory authority over Plaintiff; and was a key decision-maker as to personnel and staffing matters in Tisch including, *inter alia*, compensation, work responsibilities, time-off, demotion, and promotion.

22.     At all relevant times, Green was Plaintiff's employer within the meaning of Executive Law § 292(5) and Administrative Code § 8-102 and/or aided and abetted Plaintiff's discrimination and retaliation by Tisch and NYU described herein.

23.     Wheeless is approximately fifty (50) years old.

24.     Between approximately 2014 and November of 2020, Wheeless held a comparable position to Plaintiff as Associate Director of Revenue in Tisch's Budget Office, albeit with less experience and seniority than Plaintiff, and with a narrower scope of responsibilities compared to Plaintiff as Wheeless was only responsible for revenue matters compared to Plaintiff's responsibility encompassing the entire Budget and Finance Department.

25.     Since approximately November of 2020, Wheeless was employed by NYU, Tisch, and Green as the Assistant Dean of Finance in Tisch's Budget Office.

26.     Since approximately November of 2020, Wheeless has been Plaintiff's direct supervisor; and was a key decision-maker as to personnel and staffing matters in Tisch, including, *inter alia*, compensation, work responsibilities, time-off, demotion, and promotion.

27.     Since approximately November of 2020, Wheeless was Plaintiff's employer within the meaning of Executive Law § 292(5) and Administrative Code § 8-102 and/or aided and abetted Plaintiff's discrimination, and retaliation by Tisch and NYU described herein.

**JURY DEMAND**

28.     Plaintiff hereby demands a trial by jury in this action.

**FACTS**

5

29.     In or about September of 1999, Plaintiff was hired by NYU and Tisch as Associate Senior Budget Analyst of Tisch's Budget & Finance Office ("Budget Office").

30.     In or about 2002, Plaintiff was promoted to Associate Director of Budget and Finance of Tisch's Budget Office.

31.     Throughout Plaintiff's twenty-three (23) years of employment with NYU and Tisch, Plaintiff received consistently excellent performance evaluations and awards.

32.     At least since around October of 2019, Plaintiff has been the oldest employee in the Budget Office.

33.     In or about August of 2014, Plaintiff was diagnosed by her physician(s) as suffering from uterine cancer.

34.     In or about March of 2017, Plaintiff was rushed to the emergency room. Plaintiff was subsequently diagnosed by her physician(s) as suffering from type II diabetes, a suspected mild stroke, and hypertension.

35.     In or about August of 2018, Plaintiff was diagnosed with breast cancer.

36.     From that point on, and at all relevant times thereafter, these medical conditions have been collectively causing Plaintiff severe headaches, chest pains, neuropathy, shortness of breath, palpitations, and hyperventilation.

37.     In or about November of 2019, Plaintiff was again rushed to the emergency room due to severe stomach and chest pains.

38.     At all relevant times, the Budget Office was connected to the human resources department of Tisch. Accordingly, Budget Office employees, including Plaintiff, Green, and Wheeless, had constant access and exposure to Tisch employees' personal information including age and medical conditions.  Moreover, Plaintiff openly communicated with Green in emails and

conversations about her medical conditions in 2019 and with Wheeless in 2020, informing Green and Wheeless about her medical condition.  Therefore, Green and Wheeless were fully aware of Plaintiff's diagnosed medical conditions, Plaintiff's and her coworker's ages, and Plaintiff's co-workers' medical conditions, if any, prior to November of 2019, and at all relevant times thereafter.

39.    In or about October of 2019, Plaintiff's superior departed from her employment with Tisch.

40.    This superior's departure opened up an opportunity to assume the superior's prior work responsibilities and prestige.  Importantly, this resulted in the opportunity to replace the superior as the "contact person" for the entire Budget Office.  The contact person was the primary authority for the entire Budget Office, and thus the role garnered substantial prestige and authority, and distinguished responsibilities.

41.    As the most experienced and senior candidate, and possessing the Associate Director role directly below the former contact person, Plaintiff was the most qualified and appropriate candidate for the contact person role.

42.    However, in a November 4, 2019 email, rather than rightfully appointing Plaintiff as the contact person, Green appointed Christopher Pietrofesa ("Pietrofesa") as the contact person for the Budget Office.

43.    Pietrofesa did not suffer from any of Plaintiff's medical conditions or any comparable medical condition, was younger than Plaintiff—approximately in his thirties (30s)—and less qualified than Plaintiff for the contact person role as Pietrofesa was substantially less experienced and accomplished than Plaintiff and held the inferior position of Budget Manager: subordinate to Plaintiff's Associate Director position. Therefore, Green, NYU, and Tisch's granting the contact person role to Plaintiff's less qualified, younger, non-disabled coworker over

7

Plaintiff was an example of Green, NYU, and Tisch discriminating against Plaintiff based on her disability and age.

44.    Shortly thereafter, in or about early or mid-November of 2019, Green conveyed to Plaintiff in a meeting that Green had someone other than Plaintiff in mind for promotion to the position directly above Plaintiff's previously held by her departed superior: the Assistant Dean of Finance position.  This position was substantially more prestigious and entailed a higher salary than Plaintiff's current position as Associate Director.  As Plaintiff was the most qualified, most senior, oldest possible candidate for the promotion, and the only candidate suffering from any ongoing severe medical conditions, Green's conveying to Plaintiff that Plaintiff was not the candidate Green was targeting for promotion was another example of Green, Tisch, and NYU discriminating against Plaintiff based on her disability and age.

45.    In a meeting on or about December 11, 2019, Green told Plaintiff, Pietrofesa, and Wheeless that they would all receive additional compensation.  However, Green subsequently only authorized the additional compensation for Pietrofesa and Wheeless: Plaintiff's younger, less accomplished less deserving coworkers, neither of which suffered from any of Plaintiff's medical conditions, or anything remotely comparable.  No explanation was ever provided to Plaintiff why her additional compensation was never authorized while her younger, less accomplished, less deserving coworkers, who did not suffer from any disabilities, were given the additional compensation.  By retracting without any explanation only Plaintiff's additional compensation and not her younger, non-disabled, less deserving coworker's additional compensation, Green, NYU, and Tisch further discriminated against Plaintiff based on her disability and age.

46.    In or about March of 2020, Plaintiff was again rushed to the emergency room and subsequently diagnosed by her physicians as suffering from kidney issues.

47.     Between approximately April of 2020 and December of 2021, other than Plaintiff, multiple employees of the Budget Office who were comparably or lower ranked than Plaintiff— all of whom were approximately at least twelve (12) years younger than Plaintiff—were given some kind of promotion/salary raise(s).   This included Pietrofesa (promotion), Wheeless (promotion), Hongmei Situ (salary raise), Colin Davis (promotion), and Photini Kambos (salary raise).  Plaintiff, however, did not receive any promotion or salary raise during this period. Moreover, Pietrofesa Wheeless, Situ, and Kambos, did not suffer from any serious medical conditions or anything remotely comparable to any of Plaintiff's medical conditions.  By excluding Plaintiff from the wave of promotions issued throughout the Budget Office to younger, non-disabled, less-deserving employees, Defendants Green, NYU, and Tisch further discriminated against Plaintiff based on her disability and age.

48.     Sometime between November of 2019 and November of 2020, Plaintiff told Wheeless that Green had conveyed to Plaintiff in the aforementioned November 2019 meeting that Green planned to give the Assistant Dean of Finance promotion to someone other than Plaintiff, and that Plaintiff understood Green to be indicating to Plaintiff that Plaintiff should not even apply for the promotion.

49.     In or about November of 2020, Wheeless was promoted to become the Assistant Dean of Finance, and Plaintiff's new direct supervisor.

50.     Between approximately 2014 and Wheeless' promotion in November of 2020, Wheeless had been in a comparable position to Plaintiff. Like Plaintiff, Wheeless was an Associate Director..  Wheeless and Plaintiff also both reported to identical supervisors and were subject to officially identical performance standards.

51.    Despite their comparable roles, Plaintiff was considerably more qualified for the Assistant Dean of Finance promotion than Wheeless was.

52.    Plaintiff had approximately fourteen (14) more years of seniority and experience in Tisch's Budget Office than Wheeless—approximately triple the experience and seniority of Wheeless—and approximately eleven (11) more years of seniority and experience as an Associate Director than Wheeless.

53.    Plaintiff's years as an Associate Director also involved more substantial responsibilities than Wheeless', as Plaintiff was responsible for the entire Budget and Finance Office, whereas Wheeless was restricted to Revenue matters.

54.    Plaintiff also had prior experience efficiently handling the responsibilities of the predecessor to the Assistant Dean of Finance position on an interim basis approximately between the summer of 2012 and February of 2013 and had actually trained that same predecessor in 2013. Wheeless did not have this exceptional experience.

55.    Plaintiff also had substantially more accomplishments and a more robust history of excellent production for the Budget Office than Wheeless.

56.    Despite Plaintiff's aforementioned superior qualifications over Wheeless, Green promoted Wheeless over Plaintiff for the Assistant Dean of Finance position Green after conveying to Plaintiff that she had no chance of receiving said promotion.  By excluding Plaintiff from consideration for, and ultimately awarding of the promotion which Plaintiff was most qualified for and earmarking and granting said promotion to Plaintiff's younger, non-disabled, less-qualified coworker, Green, NYU, and Tisch further discriminated against Plaintiff based on her disability and age.

57.     In or about June of 2021, Wheeless scheduled Plaintiff's performance evaluation in a manner that rendered it impossible for Plaintiff to receive an annual compensation bonus for a positive performance evaluation before Wheeless had even evaluated Plaintiff.

58.     The Budget Office procedure for evaluations and annual compensation bonuses is as follows: 1) the employee prepares a self-evaluation for their supervisor highlighting the employee's accomplishments; 2) the supervisor then meets with the employee to discuss the employee's accomplishments; 3) the supervisor then submits the employee's evaluation based on the employee's self-evaluation and meeting; 4) finally, if the evaluation is positive, the supervisor submits a request for an annual compensation bonus for that employee before the university deadline for such requests (the "Bonus Deadline").  If submitted after the Bonus Deadline, a supervisor's request for an employee's annual compensation bonus would not be processed or approved, and the employee would, therefore, not receive an annual compensation bonus—no matter how exceptional their annual performance evaluation was.

59.     In 2021, the Bonus Deadline was on or about June 29, 2021.

60.     Despite this, prior to the Bonus Deadline, Wheeless scheduled Plaintiff's evaluation meeting for July 9, 2021: after the Bonus Deadline.

61.     Since Wheeless was required by Budget Office procedure to meet with Plaintiff and discuss Plaintiff's accomplishments before submitting a performance evaluation based on said discussion, and since Wheeless scheduled said meeting/discussion after the Bonus Deadline, Wheeless rendered it impossible for Plaintiff to receive an annual compensation bonus from a positive performance evaluation, before even beginning to evaluate whether Plaintiff's performance was, in fact, positive.

62. Moreover, in this performance evaluation meeting, Wheeless indicated that he had not even read Plaintiff's self-evaluation.

63. Moreover, Wheeless' performance evaluation of Plaintiff was ultimately positive, as Wheeless did not dispute that Plaintiff successfully executed all projects she was assigned.

64. Moreover, Pietrofesa, Situ, Davis, and Kambos—all of whom, like Plaintiff, were under Wheeless' supervision—did receive an annual compensation bonus in 2021. Thus, since it would have been impossible for these coworkers to receive said bonus if Wheeless had submitted their annual compensation bonus requests after the Bonus Deadline like he did for Plaintiff, Wheeless did not schedule the performance evaluation in the same manner as he did for Plaintiff for any of these coworkers; rather, Wheeless timely evaluated them with sufficient time to submit an annual compensation bonus request before the Bonus Deadline.

65. By scheduling Plaintiff's performance evaluation in a manner that rendered it impossible for Plaintiff to receive an annual compensation bonus for a positive performance evaluation before Plaintiff had even been evaluated, while allowing Plaintiff's younger/non-disabled coworkers the opportunity to receive a bonus for their evaluations, Defendants further discriminated against Plaintiff based on her disability and age.

66. In or around August of 2021, Wheeless informed Plaintiff that her responsibility and supervisory authority over an entire department, the Kanbar department, would be removed and given to Pietrofesa. This resulted in Plaintiff's responsibilities and supervisory authority being drastically reduced and given to her less qualified, less senior, less productive, younger, non-disabled coworker, thereby resulting in further discrimination against Plaintiff based on her disability and age.

67.    In or around September of 2021, Wheeless met with Plaintiff and informed her that Pietrofesa was now being officially promoted to Plaintiff's same position of Associate Director of Budget and Finance position.  Wheeless then asked Plaintiff mockingly if she believed she was "better" than Pietrofesa.  Wheeless' mocking Plaintiff's importance compared to her less-important, younger, non-disabled coworker, in the same meeting where Wheeless informed Plaintiff this coworker was being promoted to Plaintiff's position—and, as set forth above, usurping a substantial portion of Plaintiff's responsibilities, prestige, and supervisory authority—further discriminated against Plaintiff based on her disability and age.

68.    Immediately thereafter, on or about September 1, 2021, a budget analyst position under Plaintiff's supervision that had been vacant since around March of 2021 was transferred from under Plaintiff's command to Pietrofesa's and filled with a new hire, Photini Kambos, thereby further transferring Plaintiff's supervisory authority to her younger, non-disabled co-worker and, hence, further discriminating against Plaintiff based on her disability and age.

69.    From then on, both Plaintiff and Pietrofesa reported directly to Wheeless and were subject to officially identical performance standards,

70.    On or about October 8, 2021, Wheeless finalized the plan to implement Tisch's new meals policy for the office faculty after solely discussing the plan with Pietrofesa: excluding Plaintiff even though Plaintiff—not Pietrofesa—was responsible for policy and compliance matters such as the new meals policy.  This further transferred Plaintiff's authority, responsibility, and prestige to Pietrofesa.  By further transferring Plaintiff's authority, responsibility, and prestige to her younger, non-disabled, less qualified coworker, Defendants further discriminated against Plaintiff based on her disability and age.

13

71.     On or about November 17, 2021, Plaintiff submitted a formal discrimination complaint to the Office of Equal Opportunity in NYU (the "OEO") and NYU Provost Katherine E. Fleming via email.  In said OEO complaint, the accompanying email submitting the OEO complaint, and extensive communications with the OEO investigators, Plaintiff complained, *inter alia*, of age and disability discrimination by Green and Wheeless from the aforementioned events. Therefore, from this email submission of the November 17, 2021 OEO complaint, NYU was made aware that Plaintiff was complaining of age and disability discrimination based on the aforementioned facts.

72.     Upon submitting the November 17, 2021 complaint, the OEO informed Plaintiff that they would discuss the allegations with Wheeless and Green as part of the investigation. Green, Wheeless, and Tisch were, thus, made aware that Plaintiff had filed the internal discrimination complaint against Green and Wheeless from the aforementioned facts when the OEO discussed Plaintiff's allegations with Green and Wheeless as the OEO represented it would.

73.     On or about January 23, 2022, Plaintiff's minor son who at all relevant times was under eighteen (18) years old ("Plaintiff's son") broke his right shin in a sportingaccident and underwent surgery.  Plaintiff was informed by medical personnel treating Plaintiff's son that, based on Plaintiff's son's injury and surgery, he would be unable to use his leg for weeks and would need weeks of rehabilitation thereafter; and made Plaintiff aware that Plaintiff would be required to care for Plaintiff's son full-time for an extended period after Plaintiff's son's release from the hospital scheduled for January 26, 2022.

74.     Plaintiff immediately informed Wheeless about said accident and injury, that her minor son was undergoing surgery, would be unable to use his leg for weeks, and would need rehabilitation for weeks; and how Plaintiff would need to go on FMLA leave to care for this son

full-time for an extended period following his scheduled released from the hospital on January 26, 2022.

74. On or about January 26, 2022, Plaintiff went on FMLA leave to care for Plaintiff's son for the duration of his recovery from injuries sustained in the sporting accident and the ensuing surgery, as discussed above.  This FMLA leave request was sent to and approved by NYU's Lincoln Financial Group (the department responsible, *inter alia*, for approving such requests) on the same day. Plaintiff also informed Wheeless on the same day that Plaintiff  that Plaintiff's FMLA request she had discussed with Wheeless two (2) days prior was approved. Since Green was also responsible for supervising Plaintiff and coordinating employees' off-times, and/or because Wheeless (an Assistant Dean) reported directly all personnel updates of employees he supervised to Green (the Dean), Green was also made aware of Plaintiff's FMLA leave and purpose for it at or around the same time.

76. During this FMLA leave, Plaintiff's son was dependent on Plaintiff to meet the needs of daily living and/or to provide medical care. Plaintiff was responsible for, *inter alia*, scheduling Plaintiff' son's doctor's appointments; driving him to doctor's appointments, lab tests, and physical therapy; monitoring his daily health condition to ensure no complications arose (such as infection); bathing him, administering his medication; preparing his meals; helping him eat his meals; and helping him go in and out of bed.  Plaintiff made Defendants aware that Plaintiff would be assisting Plaintiff's son to meet the needs for daily living in the same or similar manner in her aforementioned discussion with Wheeless on January 24, 2022 and FMLA request on January 26, 2022.

77. Plaintiff returned from her FMLA leave on or about March 21, 2022.

15

78.    On or about the same day, Wheeless sent Plaintiff an email informing Plaintiff that Wheeless assigned to Pietrofesa preparation of the "Principal's Presentation:" a PowerPoint presentation of Tisch's financial plan.  Previously, Plaintiff had been significantly involved in the preparation of the Principal's Presentation, but was now excluded from it and replaced by Pietrofesa. This removed from Plaintiff and granted to Pietrofesa another important, prestigious responsibility of Plaintiff's.

79.    Also immediately upon Plaintiff's return from FMLA, Wheeless did not brief Plaintiff on the actual financial plan despite Plaintiff's being responsible for implementing the plan.  This rendered Plaintiff's job significantly more burdensome as she was denied the essential information inherent in being briefed on the financial plan she needed to implement.  Such briefing was Wheeless' responsibility.

80.    By further transferring Plaintiff's responsibility to her younger, non-disabled coworker, and denying Plaintiff essential information she required to more effectively execute some of Plaintiff's remaining responsibilities following Plaintiff's return from FMLA leave and filing an internal discrimination complaint with the OEO, Defendants retaliated against Plaintiff for going on FMLA leave and filing the internal discrimination complaint with the OEO, as well as Defendants discriminating against Plaintiff based on Plaintiff's age, disability, status as a caregiver and parent, and her son's disability.

81.    For a Budget Office department, "Level 3" personnel held supervisory authority over "Level 4" personnel and were responsible for more expensive transactions than the Level 4 personnel.

82.    On or about April 19, 2022—less than a month after returning from FMLA leave— Plaintiff received an email from Wheeless wherein Wheeless demoted Plaintiff from Level 3 to

Level 4 for the "EME" department and appointed Pietrofesa as Level 3 for EME—thereby appointing Pietrofesa as Plaintiff's supervisor for EME matters.

83.     While Plaintiff was also returned to Level 3 of the "Admin" department, being Level 3 of Admin rather than EME was a severe downgrade, as EME was an academic department involving more programs and more impactful responsibilities, including processing the primary source of revenue of Tisch and student enrollment.  By contrast, Admin was a non-academic department involving meaningless, less desirable administrative work.  As a result of its greater importance, EME was given priority over Admin for resource allocation.

84.     While Wheeless stated in this April 19, 2022 email that the change from Level 3 EME to Level 4 EME was previously discussed in January, that was false, as Wheeless had never discussed demoting Plaintiff from Level 3 EME to Level 4 EME, and had only vaguely mentioned he was considering having Plaintiff and Pietrofesa "backup" for each other.

85.     Further inconsistent, Wheeless stated in this April 19, 2022 email Plaintiff would remain Level 3 for departments that she was no longer Level 3 for and was not returned to thereafter.

86.     Further inconsistent, on or about April 22, 2022, Wheeless sent another email stating he personally would be assuming EME Level 3 and Plaintiff would still be demoted to EME Level 4.

87.     These inconsistent April 2022 emails indicated that Wheeless was struggling to fabricate an excuse for demoting Plaintiff to further discriminate against Plaintiff based on her age, disability, parental status, caregiver status, and association with her disabled son, and retaliating against Plaintiff for going on FMLA leave and filing an internal OEO complaint.

88.     Plaintiff remained without any EME Level 3 authority until it was restored to her in or about the summer of 2022.

89.     As a result of Defendants' mistreatment of Plaintiff detailed above, Plaintiff has been under constant severe stress. Plaintiff's physicians have informed Plaintiff that this stress has at least partially resulted in and/or exacerbated Plaintiff's medical conditions detailed herein.

**FIRST CAUSE OF ACTION**
**(Discrimination on the Basis of Age**
**in Violation of the New York State Executive Law § 296, *et seq.***
**against all Defendants)**

90.     Plaintiff re-alleges and incorporates by reference herein all prior paragraphs as set forth above.

91.     Defendants discriminated against Plaintiff based on Plaintiff's age in violation of Executive Law §296, *et seq.*

92.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

93.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

94.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

95.     As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional

opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

## SECOND CAUSE OF ACTION
### (Discrimination on the Basis of Age
### in Violation of the New York City Administrative Code §8-107, *et seq.*
### against all Defendants)

96.     Plaintiff re-alleges and incorporates by reference herein all prior paragraphs as set forth above.

97.     Defendants discriminated against Plaintiff based on Plaintiff's age in violation of Administrative Code §8-107, *et seq.*

98.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

99.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

100.    Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

101.    As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

### THIRD CAUSE OF ACTION
### (Discrimination on the Basis of Disability
### in Violation of the New York State Executive Law § 296, *et seq.*
### against all Defendants)

102.     Plaintiff re-alleges and incorporates by reference herein all prior paragraphs as set forth above.

103.     Defendants discriminated against Plaintiff based on Plaintiff's disability in violation of Executive Law §296, *et seq.*

104.     This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

105.     Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

106.     Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

107.     As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

**FOURTH CAUSE OF ACTION**
**(Discrimination on the Basis of Disability**
**in Violation of the New York City Administrative Code §8-107, *et seq.***
**against all Defendants)**

108.    Plaintiff re-alleges and incorporates by reference herein all prior paragraphs as set forth above.

109.    Defendants discriminated against Plaintiff based on Plaintiff's disability in violation of Administrative Code §8-107, *et seq.*

110.    This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

111.    Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

112.    Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

113.    As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

**FIFTH CAUSE OF ACTION**
**(Retaliation in Violation of**
**FMLA, 29 U.S.C. § 2600 *et seq.* against All Defendants)**

114.   Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

115.   In violation of the FMLA, Defendants retaliated against Plaintiff for requesting and/or going on FMLA leave by subjecting Plaintiff to the adverse employment actions described herein.

116.   Defendants' retaliation against Plaintiff was a willful, retaliatory response to Plaintiff's requesting/taking FMLA leave.

117.   Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

118.   Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

119.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

## SIXTH CAUSE OF ACTION
### (Retaliation in Violation of
### Executive Law § 296, *et seq.* against All Defendants)

120.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

121.    In violation of Executive Law § 296, *et seq.*, Defendants retaliated against Plaintiff for complaining of discrimination as described herein by subjecting Plaintiff to the adverse employment actions described herein.

122.    Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

123.    Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

124.    As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of
### Administrative Code § 8-107, *et seq.* against All Defendants)

125.    Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

126.    In violation of Administrative Code § 8-107, *et seq.*, Defendants retaliated against Plaintiff for complaining of discrimination as described herein by subjecting Plaintiff to the adverse employment actions described herein.

127.   Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

128.   Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

129.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

### EIGHTH CAUSE OF ACTION
**(Caregiver Discrimination in Violation of the Administrative Code §8-107, *et seq.* against All Defendants)**

130.   Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

131.   Defendants discriminated against Plaintiff based on Plaintiff's known caregiver status for Plaintiff's disabled child in violation of Administrative Code § 8-107, *et seq.*

132.   This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

133.   Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

134.   Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

135.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, lost prestige, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

## NINTH CAUSE OF ACTION
**(Family Responsibility Discrimination in violation of Executive Law § 296, *et seq.* against All Defendants)**

136.   Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

137.   Defendants discriminated against Plaintiff based on Plaintiff's familial status of being a parent in violation of Executive Law § 296(1)(a).

138.   This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

139.   Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

140.   Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

141.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

### TENTH CAUSE OF ACTION
**(Disability Association Discrimination
in Violation of the Administrative Code §8-107, *et seq.*
against All Defendants)**

142.   Plaintiff re-alleges and incorporates all prior paragraphs herein by reference.

143.   Defendants discriminated against Plaintiff based on Plaintiff's known relationship/association with Plaintiff's son who was known and/or perceived to be suffering from a disability by Defendants in violation of Administrative Code § 8-107, *et seq.*

144.   This discrimination was a result of intentional actions by Defendants, and/or deliberate indifference by Defendants.

145.   Furthermore, by reason of the continuous nature of Defendants' unlawful treatment of Plaintiff, which persisted throughout the relevant periods mentioned above, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continued to have an adverse and prejudicial impact on Plaintiff.

146.   Likewise, per Executive Orders of Governor Andrew M. Cuomo No.'s 202.67 and 202.72, if necessary, Plaintiff is entitled to the application of the tolling of any statute of limitations periods that ran between March 19, 2020 and November 4, 2020.

147.   As a result of Defendants' unlawful conduct, Plaintiff suffered and continues to suffer damages, including but not limited to lost income, lost benefits, lost promotional opportunities, mental anguish, and pain and suffering. Plaintiff is also entitled to attorney's fees.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain and suffering, shame and humiliation.

1. On the First Cause of Action, judgment against Defendants in compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

2. On the Second Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

3. On the Third Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

4. On the Fourth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

5. On the Fifth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

6. On the Sixth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

7. On the Seventh Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

8. On the Eighth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

9. On the Ninth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

10.     On the Tenth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

That Plaintiff have such other, further, and different relief as the Court deems just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
          November 3, 2022

                                        BALLON STOLL P.C.

                                        By:_____s/Marshall Bellovin_____
                                             Marshall B. Bellovin, (MB5508).
                                             *Attorneys for Plaintiff*
                                             810 Seventh Avenue, Suite 405
                                             New York, New York, 10019
                                             212-575-7900
                                             mbellovin@ballonstoll.com